**FISHER–PRICE, INC., Plaintiff**

v.

**SAFETY 1ST, INC., et al., Defendants**

**No. Civ.A. 01–51.**

United States District Court,
D. Delaware.

Aug. 28, 2003.

Patricia Smink Rogowski, Connolly, Bove, Lodge & Hutz, Wilmington, DE, for Plaintiffs/Counter–Defendants.

Allen M. Terrell, Jr., Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, DE, for Defendants/Counter–Claimants.

### MEMORANDUM AND ORDER

SLEET, District Judge.

## I. INTRODUCTION

On January 26, 2001, Fisher–Price, Inc. ("Fisher–Price") filed suit against Safety 1st, Inc. ("Safety 1st"), Dorel Juvenile Group, Inc., and Dorel Design and Development, LLC (collectively "Safety 1st" or "the defendants"), alleging infringement of several patents. The patents-in-suit, United States Patent Nos. 5,660,435 (the '435 patent), 5,947,552 (the '552 patent), 6,257,659 (the '659 patent), 6,247,755 (the '755 patent), and 431,940 (the '940 patent), relate generally to infant carriers, strollers, and bassinets.

Safety 1st asserted the affirmative defense of invalidity as to the '755, '940, '435 and '552 patents. The court held a *Markman* hearing and issued an order construing the disputed terms of the '435, '552, and '659 patents on April 2, 2002.[1] The court granted summary judgment in favor of Safety 1st with respect to infringement of the '435, '552, and '659 patents, holding Fisher–Price did not meet its burden of proof for infringement under the doctrine of equivalents. *See Fisher–Price, Inc. v. Safety 1st, Inc.*, 2002 WL 1307333, 2002 U.S. Dist LEXIS 10569 (D.Del 2002).

A jury trial commenced on July 22, 2002. Following the trial, the jury returned a verdict finding that (1) the Bouncenette and Magic Motion products infringe claim 36 of the '552 patent; (2) claim 36 is not invalid because of obviousness or anticipation; (3) Safety 1st's Magic Motion Bassinet product infringes claims 1 through 12 of the '659 patent; (4) Safety 1st's 2–in–1 Bouncenette and Magic Motion Bassinet products infringe claims 1 through 16 of the '755 patent; (5) the '755 patent is not invalid due to an inadequate written description; (6) Safety 1st's 2–in–1 Bouncenette infringes the '940 design patent; (7) the '940 and '755 patents are not invalid due to the on-sale bar; (8) Fisher–Price began marking substantially all relevant products with the '940 patent number on November, 16, 2000; (9) Safety 1st's infringement was willful; (10) Fisher–Price is entitled to lost profits damages totaling $1,000,000; and (11) Fisher–Price is entitled to $900,000 damages for profits Safety 1st made from the infringement of the '940 design patent.

Presently before the court are the plaintiff's Motion for a Permanent Injunction

---

**1.** There are no disputed claim terms in the '755 or '940 patents.

(D.I.281) and the defendants' Motion to Postpone or Stay any Permanent Injunction pending Appeal or in the Alternative for a Transition Period to Permit Sale of Current Inventory (D.I.303).[2] For the reasons that follow, the court will grant the former motion and deny the latter.

## II. DISCUSSION

### A. Motion for Permanent Injunction

■ Immediately following the entry of the jury's verdict on January 24, 2003, Fisher–Price moved for entry of a permanent injunction pursuant to 35 U.S.C. § 283. Section 283 vests the district court with broad equitable power "to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283 (2003). Accordingly, in a patent infringement suit, the court may grant a preliminary injunction pending trial, or a permanent injunction "after a full determination on the merits[ ]." *High Tech Med. Instr., Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1554 (Fed.Cir. 1995). Indeed, "[i]t is the general rule that an injunction will issue when infringement has been adjudged, absent a sound reason for denying it." *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1247 (Fed.Cir.1989). The purpose of such injunctions is to preserve the right of the patent owner to exclude others from making, using, selling, or offering to sell the patented invention. *See Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1577–78 (Fed.Cir.1983) (noting that without the right to exclude, incentive to patent is diminished). In framing injunctive relief, district courts are given wide latitude. *KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1527 (Fed.Cir.1985). Nonetheless, consistent with the equitable nature of the requested relief, the court "must consider all circumstances, including the adequacy of the legal remedy, irreparable injury, whether the public interest would be served, and the hardship on the parties and third parties". *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 659 F.Supp. 92, 94 (D.Del.1987).

■ All of the relevant criteria convince the court that entry of a permanent injunction is warranted in this case. First, a legal remedy is inadequate to redress the loss in market share that Safety 1st's continuing infringing sales would cost Fisher–Price. In addition, there are certain tangential benefits associated with patent rights, such as a marketplace reputation for enforcing one's patents, the value of which cannot be quantified in monetary damages. *See Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed.Cir.1994) ("The patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money."). Furthermore, in such a context, irreparable harm is presumed. *Richardson*, 868 F.2d at 1247 ("In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement."). As to the public interest, it is almost redundant to note the substantial interest in enforcing valid United States patents, while the court perceives no countervailing harm to the public in granting the requested injunctive relief. The infringing products at issue, infant seats and bassinets, are not medically necessary items; nor do they possess any other exceptional characteristic or function such that their removal from the stream of

---

2. The parties submitted numerous other post-trial motions, which the court has addressed in a companion memorandum and opinion.

commerce would harm the public. *See Wesley Jessen Corp. v. Bausch & Lomb, Inc.,* 209 F.Supp.2d 348, 404 (D.Del.2002) ("In those cases where courts have decline[d] to grant an injunction, the issuance of injunction would have had severe medical or environmental consequences."). The court has been presented with no other "sound reason" to deny the request for injunctive relief. Accordingly, the motion is granted.

**B. Motion to Stay the Injunction Pending Appeal or for Transition Period**

■ The defendants seek a stay of the injunction pending appeal, or, in the alternative, a transition period to permit sale of their current infringing inventory. Such a stay may be entered upon a showing by the movant of four criteria: (1) a strong showing that he is likely to succeed on the merits; (2) irreparable harm to the applicant absent a stay; (3) substantial injury to the other parties interested in the proceeding; and (4) no harm to the public interest. *Standard Havens Products, Inc. v. Gencor Industries, Inc.,* 897 F.2d 511, 512 (Fed.Cir.1990); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 659 F.Supp. 92, 94 (D.Del.1987).

■ Safety 1st has not made a showing of these factors sufficient to warrant a stay. There is no persuasive evidence that the defendant's appeal carries a strong likelihood of success on the merits. Indeed, as at trial, there is little more than conclusory attorney argument regarding the movant's asserted defenses. As to any irreparable harm to Safety 1st, it asserts that it will "incur a serious, and uncompensated, economic loss if it cannot sell off existing inventory." Reply Brief (D.I.318) at 3. Although such economic loss certainly constitutes a harm to the applicant, it is insufficient to warrant a stay of an other-

wise appropriate injunction. As one court wrote:

Thus, in reality, the only harm that [the applicant] will suffer if the injunction is not stayed is the loss of profits from the use and sale of infringing products. The Court has already found that massive infringement has occurred in the past and now [the applicant] begs that it be permitted to continue to infringe. To put an end to infringement is the reason for 35 U.S.C. § 283 which gives the Court power to issue injunctions.

*E.I. du Pont,* 659 F.Supp. at 94; 94–95 (citing cases to the same effect); *see also Crucible, Inc. v. Stora Kopparbergs Bergslags AB,* 594 F.Supp. 1249, 1264 (W.D.Pa. 1985), *affirmed in relevant part,* 793 F.2d 1565 (Fed.Cir.1986) ("[The] plaintiff now is entitled to its injunction and [the defendant], therefore, should not be heard to complain of that which it had every reason to anticipate would be the result if it lost its gamble."). Thus, although the court certainly does not revel in sending several thousands of infant products to the "landfill" as the defendants so colorfully state, neither will it endorse continuing infringement of the plaintiff's patents without compelling justification.

Regarding injury to Fisher–Price and the public interest, these factors have been discussed previously, and they, too, weigh in favor of denying the request for a stay of the injunction. As such, the defendant's motion to this effect is denied.

Finally, the plaintiff has requested the court to strike "the unauthorized sur-reply brief" (D.I.318) filed by the defendants in regard to the present motion to stay the injunction. The court views the request as yet another example of the gratuitous contentiousness that has plagued this case at every turn as well as the unwillingness of counsel to meet and confer in an attempt to resolve any trial-related grievances.

The court has endured similar inane objections and petty bickering regarding, for example, page limitations for briefing, the use of trial demonstratives, the proposed post-trial briefing schedule, and requests for short extensions of time in which to file briefs, including an objection to an "unopposed" motion to extend by a few days the time in which to file an answer brief. These objections are in addition to over forty substantive motions filed in the life of this case. The court has neither the resources nor the inclination to entertain any more such objections and, in any case, it appears the defendants were entitled to file the reply brief at issue. As such, the plaintiff's request to strike the document is denied.

## III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The plaintiff's Motion for Permanent Injunction (D.I.281) is GRANTED.

2. The defendants, Safety 1st, Inc., Dorel Juvenile Group, Inc., and Dorel Design and Development, LLC together with their shareholders, subsidiaries, affiliated companies, predecessors, successors, assigns, officers, directors, employees, servants, agents, representatives, attorneys, and their past, present, or future shareholders, subsidiaries, affiliated companies, assigns, officers, directors, employees, representatives, and attorneys, and those persons in active concert with or participation with who receive actual notice of the order by personal service or otherwise are hereby PERMANENTLY ENJOINED AND RESTRAINED from making, using, offering for sale, selling, licensing, importing, or otherwise distributing in the United States the following products: (a) the "2-n-1" Bouncenette, including model numbers 43002, 43002A, 43006, 43006A, 25006, and 25105; and (b) the Magic Motion, model number 43003.

3. It is FURTHER ORDERED that the defendants are to make every reasonable effort possible to retrieve from their major retail customers infringing products including the above-listed specifically identified products, that are still in the possession of those customers.

4. The defendants' Motion to Postpone or Stay any Permanent Injunction pending Appeal or in the Alternative for a Transition Period to Permit Sale of Current Inventory (D.I.303) is DENIED.

5. The order of permanent injunction is effective immediately.